HUMBERTO L. NIEVA, demandante y apelado, *v.* E. SOLÉ & CO., S. EN C., y ORLANDO PALMER, MÁRSHAL DE LA CORTE DE DISTRITO DE MAYAGÜEZ, demandados y apelante la primera.

Núm. 8928.—*Sometido:* Enero 16, 1945. *Resuelto:* Abril 12, 1945.

*Miranda & Miranda Esteve,* abogados de la apelante; *José Rosario Gelpí,* abogado del apelado.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Esta apelación se estableció contra una sentencia dictando un auto de *injunction* permanente contra la apelante y el márshal de la Corte de Distrito de Mayagüez, a virtud del cual se paralizó un procedimiento judicial seguido por la apelante E. Solé & Co., S. en C., contra el apelado para la ejecución de una hipoteca de bienes muebles. La apelante vendió al apelado el 25 de mayo de 1942 un automóvil por la cantidad de $578. Como evidencia del precio aplazado el apelado suscribió once pagarés por $52.62 cada uno a la orden de la apelante, venciendo el primero el 15 de junio de 1942 y los demás el día 15 de cada mes sucesivo. Para garantizar los pagarés y un crédito adicional de $165 para costas, gastos y honorarios de abogado, el apelado constituyó sobre el automóvil una hipoteca de bienes muebles a favor de la apelante, que fué debidamente inscrita en el registro de la propiedad.

Conforme alega la apelante, el apelado pagó regularmente los plazos vencidos hasta el día 15 de septiembre de 1942. Posteriormente el apelado mandó a pagar en San Juan el plazo que venció el 15 de octubre de 1942, y habiendo recibido el pago el gerente de la compañía, entregó a la persona que hizo el pago por cuenta del apelado el pagaré correspondiente al 15 de octubre de 1942. Pero cuando el gerente entregó el dinero al empleado correspondiente de la firma, no encontrando este último el pagaré que venció el 15 de octubre—el cual había sido entregado por el gerente—, creyó que la cantidad entregádale correspondía al pagaré del 15 de noviembre, y lo envió por correo al apelado a su dirección en Mayagüez. El 15 de diciembre el apelado, en vez de pagar directamente el plazo correspondiente al mes de noviembre en la oficina de la apelante en San Juan, fué donde sus agentes en Mayagüez y, mostrándoles el pagaré cancelado correspondiente al 15 de noviembre, les indicó que deseaba pagar el plazo correspondiente al 15 de diciembre, y al efecto les entregó la cantidad de $52.62. Como los agentes no tenían en su poder los pagarés, extendieron y entregaron al apelado un recibo provisional por dicha cantidad. Notificada la apelante del pago verificado por el apelado en la oficina de sus agentes en Mayagüez, acreditó la suma pagada el 15 de diciembre de 1942 al pagaré vencido el 15 de noviembre del mismo año, que según la apelante no había sido pagado y el cual estaba en posesión del apelado con motivo del alegado error. El 30 de diciembre de 1942 la apelante requirió al apelado para que satisficiera el pagaré vencido el 15 de diciembre de 1942 en el plazo de cinco días, y el 15 de enero de 1943 el apelado envió un giro postal por $52.62, habiéndosele remitido entonces el pagaré correspondiente al 15 de diciembre de 1942. El 8 de febrero de 1943 fué nuevamente requerido el apelado para que satisficiera el pagaré vencido el 15 de enero, a lo cual se negó alegando haberlo pagado con el giro postal antes indicado y requiriendo a la apelante

que le enviase el referido pagaré. No habiendo enviado la apelante el pagaré correspondiente al 15 de enero por entender que no había sido satisfecho, y no habiendo pagado tampoco el apelado los correspondientes al 15 de febrero y 15 de marzo de 1943, la apelante en el mes de marzo,[1] haciendo uso de lo dispuesto en la sección 14 de la Ley Hipotecaria de Propiedad Mueble, Ley núm. 19 de 1927, págs. 491, 501, solicitó del márshal de la corte de distrito la venta del automóvil en pública subasta. En el escrito dirigido al márshal se hizo constar que la reclamación era por el importe de tres pagarés, o sea, los correspondientes a febrero, marzo y abril, pues la apelante renunciaba a cobrar el pagaré vencido en el mes de enero con el fin, según alegó, de no complicar innecesariamente el procedimiento; y reclamó además la suma de $165 estipulada en el contrato para costas, gastos y honorarios de abogado en caso de ejecución. A los efectos de la incautación y venta del automóvil por el márshal, la apelante entregó a dicho funcionario una fianza de seiscientos dólares a que se refiere la sección 14 antes citada. Incautado el márshal del automóvil y notificado del procedimiento el apelado, radicó éste en la corte de distrito la solicitud de injunction de este caso, alegando en síntesis que había satisfecho a la apelante todos los plazos correspondientes hasta la fecha de la institución del procedimiento ante el márshal, y depositó en la secretaría de la corte los plazos correspondientes a los meses de febrero, marzo y abril de 1943, que completaban el montante de los pagarés que vencieron con posterioridad al 15 de enero de 1943; y solicitó de la corte que se dictase un auto de injunction dirigido contra la apelante y el márshal ordenándoles que se abstuviesen de vender el automóvil en cuestión. Alegó entre otras cosas que la fianza prestada por la apelante era nula porque no había sido fijada por el márshal, sino que había

---

[1] De acuerdo con el contrato, vencido un pagaré y no satisfecho, se entendían vencidos todos los posteriores.

sido aceptada por éste por la cantidad que fijó la apelante, y alegó también que la declaración jurada que la apelante presentó al márshal era nula por haber sido suscrita ante la subsecretaria de la Corte de Distrito de San Juan, quien según el apelado carece de facultades para autorizar el *affidavit*, que alega es un documento privado, y asimismo por no haberse fijado a dicho documento el correspondiente sello de rentas internas de veinticinco centavos ni haberse anotado en el registro de affidavits. Alegó en su demanda que dada la rapidez del procedimiento que establece la ley para la ejecución de hipotecas sobre bienes muebles, se le causarían daños irreparables al venderse el automóvil de su propiedad. La corte de distrito, sin oír a los demandados, expidió un auto de injunction preliminar exigiendo al demandante una fianza de ciento cincuenta dólares, y luego de haber sido denegada su moción para que se disolviese el injunction, la demandada excepcionó y contestó la demanda. Celebrado el juicio, la corte el 22 de diciembre de 1943 dictó un auto permanente de injunction contra la apelante y el márshal, ordenándoles que se abstuviesen de vender el automóvil del apelado en el procedimiento de ejecución de hipoteca de bienes muebles, pudiendo el secretario de la corte entregar a la apelante la cantidad de $157.86 depositada por el apelado a favor de ella, imponiendo a ésta el pago de costas, sin incluir honorarios de abogado.

■ La sección 678 del Código de Enjuiciamiento Civil en lo pertinente dispone:

"No podrá otorgarse un *injunction:*

"1. Para suspender un procedimiento judicial que se estuviere tramitando al instituirse la acción en que se solicita el *injunction,* a menos que la restricción fuere necesaria para impedir una multiplicidad de tales procedimientos.

"*       *       *       *       *       *       *"

En ninguna parte de la demanda se alegó ni tampoco se probó que el auto de injunction solicitado por el apelado era

necesario para impedir una multiplicidad de procedimientos. Tampoco se especificaron en la demanda ni se probaron en el juicio los daños irreparables que en términos generales alegó el apelado le serían causados de no concederse el injunction solicitado. Proveyendo la Ley Hipotecaria de Propiedad Mueble un procedimiento rápido y sumario para el cobro de la hipoteca,[2] la apelante tenía derecho a acogerse

(2) La sección 14 de la Ley Hipotecaria de Propiedad Mueble, Compilación de los Estatutos Revisados y Códigos de Puerto Rico, 1941, pág. 1283, prescribe:

"El acreedor hipotecario puede, después de diez días desde el incumplimiento de la condición, hacer que la propiedad hipotecada, o cualquiera parte de la misma, sea vendida en pública subasta por el márshal del distrito en el cual residiere el deudor hipotecario, o en donde se encontrare la propiedad, siempre que se hubiere fijado al público un aviso, por diez días por lo menos, respecto a la fecha, lugar y fines de dicha venta, en dos o más sitios públicos en el distrito en el cual el márshal tuviere su oficina, y el acreedor hipotecario notificará al deudor hipotecario, o a la persona en posesión o a cargo de la propiedad, y también a las personas que tuvieren hipotecas subsiguientes que consten inscritas en la oficina del registrador de la propiedad del distrito en el cual estuviere inscrita la hipoteca original, de la fecha y lugar de la venta, ya sea mediante notificación por escrito, dirigida al deudor hipotecario o dejada en su residencia si estuviere en el municipio, o enviada por correo, si no residiere en tal municipio, por lo menos diez días antes de la venta.

"El márshal podrá ser el de una corte municipal o el de una corte de distrito, según fuere la cantidad jurisdiccional, según se dispone actualmente por la ley, y la venta tendrá que hacerse en la oficina del márshal. El márshal a requerimiento del acreedor hipotecario, cuando viniere acompañada de una copia certificada de la hipoteca con una nota del registrador de la propiedad haciendo constar su inscripción en el registro, tomará inmediatamente posesión de la propiedad hipotecada y la venderá según se dispone en esta Ley, hubiérese o no expedido auto alguno de ejecución o procedimiento judicial, pero si no se hubiere expedido auto alguno de ejecución, el márshal puede exigir, para su propia protección una fianza al acreedor hipotecario por la suma que el márshal estimare conveniente sin que, en ningún caso, exceda del doble del importe de la propiedad que haya de venderse, y el márshal quedará libre de toda responsabilidad por cualquier acto realizado por él en relación con dicha venta. Dicha fianza será nula y no tendrá efecto después de sesenta días contados desde la fecha de la venta, a menos que el deudor hipotecario, dentro del antedicho período de sesenta días instituyere una acción contra el márshal por cualquier acto de éste en relación con dicha venta, pero la responsabilidad del márshal en ningún caso excederá del valor de la propiedad según conste en la hipoteca.

"El márshal que hiciere la venta deberá, dentro de los diez días siguientes, librar una constancia del procedimiento que hubiere seguido y la archivará en la oficina del registro en el cual estuviere inscrita la hipoteca. El registrador de la propiedad inscribirá dicha constancia, y si se hubiere hecho la venta a virtud de una orden de ejecución expedida por una corte, entonces una copia del

a ese procedimiento, el cual aceptó el apelado al celebrar el contrato de hipoteca de bienes muebles. *Giménez et al.* v. *Brenes,* 10 D.P.R. 128, 133. En su opinión que sirvió de base a la expedición del auto de injunction permanente, la corte entre otras cosas dijo:

"La solicitud hecha por dicha demandada al márshal de esta corte para que tomase posesión y vendiese dicho automóvil, fué jurada ante la subsecretaria de la Corte de Distrito de San Juan sin que aparezca anotado dicho juramento en un registro de affidavits, ni numerado, ni adherido al mismo un sello de rentas internas de 25 centavos y sin que tal juramento hubiese sido tomado en asuntos de interés público, apareciendo todo eso también de la fianza prestada y sometida al mismo márshal de esta corte, cuya cuantía no fué fijada por el expresado funcionario."

Los defectos que el demandado y la corte de distrito imputan a la fianza y declaración jurada que la apelante presentó al márshal, no existen. El hecho de que el márshal aceptara la fianza por la cantidad en que fué extendida, equivale a que él hubiese fijado su montante. En cuanto a la incapacidad de la subsecretaria de la Corte de Distrito de San Juan para administrar el juramento en la declaración que se presentó al márshal, y demás defectos de la declaración jurada señalados por el juez de la corte inferior, no existen, pues ya en el caso de *Soto* v. *Tesorero de Puerto Rico* (1938), 53 D.P.R. 950, se resolvieron todas las cuestiones, con excepción de la que se refiere al registro de affidavits, adversamente a lo expresado en su opinión por la corte inferior, y en cuanto a no aparecer de la faz de la de-

diligenciamiento del márshal se tendrá en cuenta como parte de las costas de la venta, los cuales honorarios pagará el márshal al registrador de la propiedad. El diligenciamiento describirá detalladamente la propiedad vendida, y expresará la cantidad recibida por cada artículo y surtirá el efecto de la liberación del gravamen creado por la hipoteca sobre dicha propiedad. El producido de la venta se aplicará al pago, en primer término, de las costas y gastos de depósito y venta, y, después, al pago de la demanda u obligación garantizada por la hipoteca, el residuo se pagará a las personas que tuvieren inscritas subsiguientes hipotecas, por su orden, y el balance se pagará al deudor hipotecario, a petición suya."

claración jurada el número correlativo del affidavit, ese hecho no implica necesariamente que el mismo no haya sido anotado en el registro. Se presume que todo funcionario cumple con su deber, y el no aparecer dicha cifra puede atribuirse a una inadvertencia o distracción del funcionario, por lo que mientras no se demuestre afirmativamente con la certificación correspondiente que el affidavit no fué inscrito, debemos presumir, de acuerdo con el art. 102(15) de la Ley de Evidencia que el funcionario cumplió con su deber anotándolo en el registro. Véase por analogía *Franzeen* v. *Johnston* (1940), 111 F. (2d) 817, 820.

Prohibiendo el artículo 678 del Código de Enjuiciamiento Civil que el auto de injunction sea expedido para paralizar un procedimiento judicial cuando el injunction no sea necesario para impedir multiplicidad de procedimientos; y no habiéndose probado además por el apelado que la venta del automóvil pueda causarle daños irreparables, somos de opinión—sin entrar a considerar los méritos del caso sobre la ejecución de la hipoteca, por no estar ante nos dicho procedimiento—que la corte erró en el presente caso al dictar el auto de injunction, impidiendo así que la apelante hiciera uso del procedimiento especial que le concede la ley.

*Procede por lo expuesto revocar la sentencia apelada y en su lugar dictar otra declarando sin lugar la solicitud de injunction, con costas al demandante sin incluir honorarios de abogado.*